# Exhibit A

FILED

SEP 5 2019

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF CALHOUN

9TH CIRCUIT COURT CLERK

JANIYAH CASWELL, a Minor,
By Her Next Friend and Mother,
TAYLOR CASWELL,

     Plaintiff,

vs.

Case No. 19-  2515  -NH

Hon. JOHN HALLACY

BRONSON METHODIST HOSPITAL,
A Domestic Nonprofit Corporation,
d/b/a BRONSON BATTLE CREEK HOSPITAL;
GRACE HEALTH INC.,
A Domestic Nonprofit Corporation;
HEATHER FOULKE, CNM;
HANNAH MARIE THOMAS-GENTZ, CNM;
LANIE C. SANTOS, CNM;
KRISTA M. RUNYAN, CNM;
BETHANY GONZALEZ, CNM;
PATRICIA R. ZULL, CNM;
JEFFREY CUSTER, MD;
BRENDAN M. COLLINS, DO; and
LINDSAY K. WRISTON, MD,
Jointly & Severally

     Defendants.

---

JESSE M. REITER (P40692)
EUEL W. KINSEY (P36690)
Attorneys for Plaintiff
Reiter & Walsh, P.C.
122 Concord Road
Bloomfield Hills, MI 48304
(248) 593-5100

---

**THERE IS NO OTHER PENDING OR RESOLVED CIVIL ACTION ARISING OUT OF THE TRANSACTION
OR OCCURRENCE ALLEGED IN THE COMPLAINT.**

JESSE M. REITER (P40692)
EUEL W. KINSEY (P36690)

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:  (248) 593-5100
Facsimile:  (248) 593-5108

## COMPLAINT AND JURY DEMAND

NOW COMES the above-named Plaintiff, by her Next Friend and Mother, and through her attorneys, **REITER & WALSH, P.C.,** hereby submits Plaintiff's Complaint and Jury Demand and states unto this Honorable Court as follows:

1.      Plaintiff, **JANIYAH CASWELL,** is a resident of the City of Battle Creek, County of Calhoun, State of Michigan.

2.      **TAYLOR CASWELL,** as Next Friend and Mother of **JANIYAH CASWELL,** is a resident of the City of Battle Creek, County of Calhoun, State of Michigan.

3.      The amount in controversy exceeds $25,000.00.

4.      At all times hereinafter mentioned, the Defendants, **HEATHER FOULKE, CNM; HANNAH MARIE THOMAS-GENTZ, CNM; LANIE C. SANTOS, CNM; KRISTA M. RUNYAN, CNM; BETHANY GONZALEZ, CNM;** and **PATRICIA R. ZULL, CNM,** were engaged in the practice of their profession in the City of Battle Creek, County of Calhoun, State of Michigan, and were and are duly licensed to practice nursing in the County of Calhoun, State of Michigan, holding themselves out to the public, and to **JANIYAH CASWELL,** and **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL,** in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held themselves out as skilled and competent nurse midwives capable of properly and skillfully treating, caring for, and curing individuals seeking their services.

**REITER & WALSH, P.C.**
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

2

5.     At all times hereinafter mentioned, the Defendants, **JEFFREY CUSTER, MD; BRENDAN M. COLLINS, DO; and LINDSAY K. WRISTON, MD**, were engaged in the practice of their profession in the City of Battle Creek, County of Calhoun, State of Michigan, and were and are duly licensed to practice medicine in the County of Calhoun, State of Michigan, holding themselves out to the public, and to **JANIYAH CASWELL, and TAYLOR CASWELL** as Next Friend and Mother of **JANIYAH CASWELL**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held themselves out as skilled and competent doctors capable of properly and skillfully treating, caring for, and curing individuals seeking their services, with specialized skills in the area of Obstetrics and Gynecology.

6.     At all times hereinafter mentioned, the Defendants, **LABOR AND DELIVERY NURSES at BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL**, were engaged in the practice of their profession in the City of Battle Creek, County of Calhoun, State of Michigan, and were and are duly licensed to practice nursing in the County of Calhoun, State of Michigan, holding themselves out to the public, and to **JANIYAH CASWELL, and TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL**, in particular, as possessing an ability to exercise that degree of skill, knowledge, and ability generally possessed by others in the same profession, and further held themselves out as

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

3

skilled and competent nurses capable of properly and skillfully treating, caring for, and curing individuals seeking their services.

7.     The Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, are duly organized and existing under and by virtue of the laws of the State of Michigan, with their principal places of business in the County of Calhoun, State of Michigan.

8.     **GRACE HEALTH INC., a Domestic Nonprofit Corporation**, holds itself out as a Federally Qualified Health Center but because the websites for both **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, identify the named nurses and doctors as agents and/or employees, they are named in both a federal action and this action.

9.     The United States of America has denied the federal claim against these defendants without any explanation, therefore coverage under the Federal Tort Claims Act is uncertain.

10.     At all times pertinent hereto, the Defendants, **HEATHER FOULKE, CNM; HANNAH MARIE THOMAS-GENTZ, CNM; LANIE C. SANTOS, CNM; KRISTA M. RUNYAN, CNM; BETHANY GONZALEZ, CNM; PATRICIA R. ZULL, CNM; JEFFREY CUSTER, MD; BRENDAN M. COLLINS, DO; and LINDSAY K. WRISTON, MD**, were the apparent, ostensible, implied, and/or express

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:      (248) 593-5100
Facsimile:  (248) 593-5108

4

agents, and/or were employed by the Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation,** and were acting in the course and scope of said employment and/or agency when the acts of negligence and malpractice, hereinafter set forth and described, were committed, thereby imposing vicarious liability upon the Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation,** by reason of the doctrine of respondeat superior.

11.     At all times pertinent hereto, the Defendants, **LABOR AND DELIVERY NURSES at BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL,** were the apparent, ostensible, implied, and/or express agents, and/or were employed by the Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL,** and were acting in the course and scope of said employment and/or agency when the acts of negligence and malpractice, hereinafter set forth and described, were committed, thereby imposing vicarious liability upon the Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL,** by reason of the doctrine of respondeat superior.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:     (248) 593-5100
Facsimile:  (248) 593-5103

5

12. At all times pertinent hereto, the Defendants, **HEATHER FOULKE, CNM; HANNAH MARIE THOMAS-GENTZ, CNM; LANIE C. SANTOS, CNM; KRISTA M. RUNYAN, CNM; BETHANY GONZALEZ, CNM; PATRICIA R. ZULL, CNM; JEFFREY CUSTER, MD; BRENDAN M. COLLINS, DO;** and **LINDSAY K. WRISTON, MD**, expressly and/or impliedly held out to the public, and to **JANIYAH CASWELL**, and **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL**, in particular, as agents, servants, and/or employees of the Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**.

13. At all times pertinent hereto, the Defendants, **LABOR AND DELIVERY NURSES at BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL**, expressly and/or impliedly held out to the public, and to **JANIYAH CASWELL**, and **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL**, in particular, as agents, servants, and/or employees of the Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL**.

14. As such, the Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, are liable and responsible for all acts and/or omissions to act by the individuals.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

6

15.    At all times hereinafter mentioned Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, had represented and held out to the public and to **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL**, and Plaintiff **JANIYAH CASWELL**, that said Defendants were equipped, qualified and prepared to receive and treat the public, and in particular **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL**, and Plaintiff **JANIYAH CASWELL**, for treatment and care, and that they employed and maintained on their staffs, competent, qualified, and licensed staff of physicians, surgeons, technicians, residents, interns, nurses, and in general, competent help otherwise in the conduct and operation of said corporations.

16.    At all times hereinbefore and hereinafter mentioned Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, undertook and had the duties of providing **TAYLOR CASWELL** and **JANIYAH CASWELL** with the necessary and proper facilities for the care and treatment of their condition, and to provide adequate safeguards for their health and welfare.

17.    Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, agreed to furnish **TAYLOR**

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:    (248) 593-5100
Facsimile:    (248) 593-5108

CASWELL and **JANIYAH CASWELL** with the services of competent, qualified, and licensed staff of physicians, surgeons, residents, technicians, interns, nurses, and other employees to properly diagnose conditions and to render competent advice, treatment and assistance in accordance with the standards of the community.

18.     At all times pertinent hereto, Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation,** by and through their duly authorized agents, servants, and/or employees, had the duty to provide **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL** and Plaintiff **JANIYAH CASWELL** with the services of a competent, qualified, and licensed staff of physicians, surgeons, technicians, residents, interns, nurses, and other employees to properly diagnose their condition, to render competent advice and assistance in the care and treatment of their case, and to render same in accordance with the standards then prevailing throughout the nation.

19.     Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation,** are responsible for the operation of the health care facilities or hospitals, the selection of their medical staff, and for the quality of care and record keeping rendered at said health care facilities or hospitals, pursuant to MCLA 333.20141, MCLA 333.21513, and MCL 333.20175.

**REITER & WALSH, P.C.**
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:    (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:     (248) 593-5100
Facsimile:  (248) 593-5103

20.    At all times pertinent hereto, Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, were possessed, pursuant to MCLA 333.20141 and MCLA 333.21513, by and through their administrative and supervisory staffs, with the right, duty and power to make determinations with respect to any given physician so as to whether said physician should be granted staff privileges and, if said privileges were to be granted, the nature of such privileges, the nature of any required supervision, and the time period for which said supervision would be required.

21.    **TAYLOR CASWELL**, individually, and as Next Friend of **JANIYAH CASWELL**, and Plaintiff **JANIYAH CASWELL** contracted and consulted with Defendants for medical treatment and care, and had been treating with the aforementioned Defendants at all times relevant hereto.

22.    At the time of the circumstances relevant to this claim, Taylor Caswell was a 17-year-old, African American, G1P0. At the time this pregnancy began, her obstetrical history was significant for obesity, depression, marijuana use, and asthma.

23.    Ms. Caswell's prenatal care was initiated on 11/11/16, at Grace Health in Battle Creek. At that time, it was noted that she had been suffering from depression since finding out she was pregnant. She had subsequent prenatal visits on 11/14/16, 12/22/16, 1/19/17, 2/16/17, 3/16/17, 4/27/17. On 4/27/17, Ms. Caswell commented that her baby was

9

moving daily, but not moving as much as she thought it would. During these visits, her prenatal care providers were Lanie C. Santos, CNM and Krista M. Runyan, CNM.

24.    On 5/2/17, Ms. Caswell presented to Bronson Battle Creek Birthplace – Triage with complaints of decreased fetal movement. A non-stress test was performed, was reactive, and Ms. Caswell was discharged by CNM Runyan.

25.    Ms. Caswell continued her prenatal care at Grace Health on 5/11/17 with CNM Runyan.

26.    On 5/21/17, Ms. Caswell again presented to Bronson Battle Creek Birthplace – Triage with complaints of decreased fetal movement. It was noted that she often has decreased fetal movement. A non-stress test was reactive and she was sent home by Hannah Marie Thomas-Gents, CNM, and Lindsay Wriston, MD. A note was sent to Grace Health to schedule an ultrasound for AFI given Ms. Caswell's complaint of decreased fetal movement often.

27.    A non-stress test was performed on 5/23/17 at Grace Health. It was non-reactive with two possible decels, and she was sent to Bronson Battle Creek Birthplace – Triage for further monitoring. A non-stress test was performed at Bronson and was found to be reactive. Ms. Caswell was discharged by Bethany Gonzalez, CNM with instructions to follow-up at Grace Health the next day.

28.    During her prenatal visit the next day, on 5/24/17, a non-stress test was performed and was reactive.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:        (248) 593-5100
Facsimile:    (248) 593-5102

10

29. During her prenatal visit on 5/25/17, an ultrasound was performed and it was interpreted as showing normal growth and fluid. At this time, she was scheduled for weekly NSTs and growth USs with AFI. Her next NST was performed on 5/31/17 and was reactive.

30. On 6/6/17, Ms. Caswell presented to Bronson Battle Creek Birthplace – Triage with complaints of contractions and decreased fetal movement. A non-stress test was performed, was again reactive, and Ms. Caswell was discharged by CNM Runyan.

31. Her next prenatal appointment was on 6/8/17. Gestational age was 40 weeks, 1 day. She was asked by CNM Runyan to follow-up in one week for US with AFI, NST, and to discuss induction of labor. The NST performed on this day was reactive.

32. On 6/10/17, Ms. Caswell presented to Bronson Battle Creek Birthplace – Triage with complaints of decreased fetal movement. It was noted that Ms. Caswell had taken Castor oil. An NST was performed, was reactive, and Ms. Caswell was discharged by Patricia R. Zull, CNM.

33. On 6/12/17 at 09:48, Ms. Caswell presented to Bronson Battle Creek Birthplace – Triage with complaints of contractions since 07:00. Upon vaginal exam, she was found to be dilated to 2, 90% effaced, -1 station. An NST was performed and was reactive. It was noted that there was no appreciable change in her condition in two hours, and she was discharged home by Heather Foulke, CNM with instruction to rest and take a warm bath.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5102

11

34. Later in the day on 6/12/17 at 16:39, Ms. Caswell presented to Bronson Battle Creek Birthplace with complaints of contractions and bloody show. Gestational age was 40 weeks, 5 days. At 17:03, a vaginal exam was performed by CNM Foulke. She was noted to be dilated to 2, 100% effaced, and -2 station. An NST preformed at 17:15 was reactive. Another vaginal exam was preformed at 19:02 and dilatation had changed to 4. Ms. Caswell was having contractions every 2-3 minutes. Fetal heart rate was 140, variability was moderate, with accelerations present and no decelerations. The strip was described as a category I. Intermittent fetal monitoring per AWHONN guidelines was ordered. It was noted that Jeffrey Custer, MD was the on-call consulting physician. The estimated fetal weight was 8 lbs.

35. At 19:33, Ms. Caswell's bishops score was 9.

36. At 20:54, a progress note was made by CNM Thomas-Gentz. Fetal heart rate was 140, variability was moderate, with accelerations present and no decelerations. The strip was described as a category I.

37. At 22:41, a progress note was made by CNM Thomas-Gentz. Fetal heart rate was 135, variability was moderate, with accelerations present and no decelerations. The strip was described as a category I. She was still dilated to 2, 100% effaced, and -2 station. The plan was to augment with Pitocin at 04:00 if SVE was unchanged. Discharge the following day was also discussed if interventions did not achieve successful cervical change.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:      (248) 593-5100
Facsimile:   (248) 593-5103

38.     At 22:54, Ms. Caswell rated her pain as an 8 and morphine was administered. At 23:59, she was noted to be relaxing in the tub.

39.     On 6/13/17, at 01:15, it was noted by Kelly M Spicer, RN that the unit did not have appropriate staff to start Pitocin. At 1:54, it was noted by Kelly M Spicer, RN that per CNM, to let Ms. Caswell rest through the night without interruptions for monitoring.

40.     At 05:00 Kelly M Spicer, RN noted that per CNM Thomas-Gentz to let Ms. Caswell rest and to check cervix at 07:00 for progression and to reevaluate the plan of care.

41.     At 05:35, Ms. Caswell requested pain medications. A vaginal exam was performed by Kelly M Spicer, RN and she was noted to be dilated to 4.5.

42.     At 05:53, it was noted that Ms. Caswell would like to sit on birthing ball, and that she will use tub and walk halls to encourage cervical change. It was noted they would reevaluate around 07:45 and again that the unit did not have appropriate staffing to start pitocin at that time.

43.     At 05:58, CNM Thomas-Gentz noted that Ms. Caswell had slept well and reported she woke at 03:30 to contractions getting more intense, that she tried the tub without pain relief and states she was very uncomfortable. At this time, fetal heart tones were noted to be 130, variability was moderate with accelerations present and no decelerations. The strip was described as Category I. She was noted to be dilated to 4.5, 100% effaced, and -2 station. CNM Thomas-Gentz further noted that she "*Previously discussed POC with Dr. Collins around 0430; he recommended discharge home if no*

13

*cervical change this morning with plan for IOL on Thursday for obesity. SVE shows minimal change. Recommended position changes, tub, and repeat SVE in 2 hours. Patient tearful but willing to try position changes and tub. Intermittent monitoring per protocol. Dr. Collins on call consulting physician.*"

44. At 07:42, Sarah Lennon, RN noted Ms. Caswell was dilated to 5.

45. At 08:05, CNM Thomas-Gentz noted that patient remained uncomfortable. At this time, fetal heart tones were noted to be 145, variability was moderate, with accelerations present and no decelerations. The strip was described as a category I. She was noted to be dilated to 5, 100% effaced, and -2 station. At this time, Ms. Caswell requested an epidural. CNM Thomas-Gentz noted she discussed the epidural with doctor and oncoming CNM. Intermittent monitoring per protocol was noted. Brendan M. Collins, DO was the on-call consulting physician.

46. At 08:38, Sarah Lennon, RN noted dilation was 5. At this time, Ms. Caswell's membranes were ruptured by CNM Santos. Sarah Lennon, RN noted the fluid was clear.

47. At 08:41, Sarah Lennon, RN noted that CNM Santos took the patient off the monitor.

48. At 08:49, a progress note is entered by CNM Santos. Fetal heart tones were noted to be 140, variability was moderate with accelerations present and no decelerations. The strip was described as a category I. She was noted to be dilated to 5, 100% effaced, and -1 station. At this time, Ms. Caswell was noted to be coping well, but tired,

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

14

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:      (248) 593-5100
Facsimile:  (248) 593-5108

uncomfortable with contractions, and making cervical change. The plan was to recheck her cervix in two hours and if no change, will place an IUPC. CNM Santos further notes *"Discussed birth plan: desires immediate STS, delayed cord clamping and exclusive breastfeeding. Dr. Collins on call consulting physician. Plan of care established and communicated with Taylor and her family."*

49.     At 09:41, the epidural was started.

50.     At 09:57, Sarah Lennon, RN noted Ms. Caswell was dilated to 6. A FSE was placed by CNM Santos. At this time, Ms. Caswell's blood pressure dropped to 99/30. At 10:00, her blood pressure was 94/36. At 10:05, her blood pressure was 107/46.

51.     At 10:06, a progress note is entered by CNM Santos. Fetal heart tones were noted to be 140 with minimal variability. There are no accelerations but decelerations are present. The strip was described as a category II. She was noted to be dilated to 6, 100% effaced, and 0 station. Ms. Caswell reported she is much more comfortable after the epidural. She was also noted to be leaking some amounts of amniotic fluid. CNM Santos further noted *"Anesthesia here to address intermittent hypotension and maternal tachycardia. Category II resuscitation measures including: treatment of hypotension, frequent position changes, IV fluid bolus. Anticipate vaginal delivery. Dr. Collins on call consulting physician. Currently on unit."*

52.     At 10:15, Ms. Caswell's blood pressure was 98/47. At 10:17, her blood pressure was 114/88. At 10:20, her blood pressure was 102/48.

53. At 10:24, an epidural block was performed by Matthew N. MacNeil, CRNA.

54. At 10:25, Ms. Caswell's blood pressure was 102/71. At 10:30, her blood pressure was 96/45. At 10:34, her blood pressure was 76/40.

55. At 10:35, a vaginal exam was performed by CNM Santos and Ms. Caswell was noted to be dilated to a 7.

56. At 10:39, Ms. Caswell's blood pressure was 92/45. At this time, CNM Santos enters a progress note stating fetal heart tones were 145 and variability is moderate. There was noted to be accelerations with head stimulation and variable decelerations. The strip was described as a category II. She was noted to be dilated to 7, 100% effaced, and 0 station. CNM Santos further notes *"RN to treat hypotension per anesthesia protocol. Continue category 2 resuscitation measures (IVF, lateral positioning, consider IUPC if worsening variable decelerations). Anticipate vaginal delivery/room ready. Dr. Collins on call consulting physician. Reviewed EFM and plan of care."*

57. At 10:40, Sarah Lennon, RN noted anesthesia had been notified of blood pressures. At 10:41, Sarah Lennon, RN noted *"verbal orders to run epidural to 10 mL/hr per Dr. Hall."* At 10:43, Ms. Caswell's blood pressure was 85/41. At 10:44, Sarah Lennon, RN notes 100 MCG of Neosynephrine was given. At 10:45, her blood pressure is 95/51. At 10:46, her blood pressure is 102/53. At 10:50, her blood pressure is 99/57 and a foley is placed. At 10:56, her blood pressure is 74/43 and anesthesia is notified of blood pressure. At 10:58, Sarah Lennon, RN gives Ms. Caswell ephedrine per Dr. Hall. At 10:59, her

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5103

16

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

blood pressure is 85/39. At 11:03, Dr. Hall is noted to be at the bedside. At 11:05, her blood pressure is 105/56. At 11:09, her blood pressure is 112/93, at 11:15, her blood pressure is 123/108. At 11:25, her blood pressure is 107/66.

58.     At 11:27, Sarah Lennon, RN notes that the provider reviewed the strips.

59.     At 11:30, Ms. Caswell's blood pressure is 104/55.

60.     At 11:59, a progress note is entered by CNM Santos. Fetal heart tones were noted to be 140 with moderate variability. There are no accelerations or decelerations present. The strip was described as a category I. Ms. Caswell was noted to be sleeping. CNM Santos further noted *"Encourage rest until desire to push. Continuous fetal monitoring. Frequent position changes when awake. Category II resuscitation measures if variable decelerations return. Anticipate vaginal delivery. Dr. Collins on call consulting physician."*

61.     At 12:05, a vaginal exam was performed by CNM Santos and Ms. Caswell is noted to be dilated to 7. At 12:10, an IUPC is placed by CNM Santos.

62.     At 12:18, an addendum was entered by CNM Santos stating she was called back into the room due to Ms. Caswell's complaints of increased rectal/vaginal pressure. There was no change from her pervious vaginal exam. Fetal heart tones were noted to be 140 with moderate variability. Both accelerations and decelerations are present. The strip was described as a category II due to intermittent variable decelerations. Ms. Caswell was noted to be sleeping. CNM Santos further noted *"IUPC placed. Will monitor for adequate MVU's. If inadequate MVU's will initiate oxytocin. Continue frequent position changes to*

17

*facilitate fetal rotation and descent. Anticipate vaginal delivery. Dr. Collins on call collaborating physician.*"

63.     At 13:58, a vaginal exam was performed by CNM Santos. Ms. Caswell was noted to be dilated to a 9. A progress note by CNM Santos at 14:01 states fetal heart tones were at 150 with moderate variability. Both accelerations and decelerations are absent. The strip was described as a category I. CNM Santos further noted, "*Uncomfortable with contractions but falls asleep between. MVU's averaging 200 mm/Hg. Continue frequent position changes. Continue continuous FHR monitoring. Anticipate vaginal delivery/room ready. Dr. Collins on call consulting physician.*"

64.     At 14:20, Sarah Lennon, RN notes the FSE is removed due to patient's movement and an ultrasound is placed. CNM Santos is notified of the removal of the FSE at 14:24.

65.     At 14:30, patient states she would like to push and CNM Santos is notified. Per a vaginal exam performed at 14:40 by CNM Santos, Ms. Caswell was dilated to 10. At 14:51, CNM Santos corrects her dilation to 9.5 due to the fact that Ms. Caswell is no longer in hand-knee position.

66.     At 14:59, a progress note was entered by CNM Santos noting she was called to the room due to Ms. Casswell stating she had urge to push. Fetal heart tones were noted to be 155 with moderate variability. Both accelerations and decelerations are absent. The strip was described as a category I with intermittent periods of category II but overall reassuring. CNM Santos further noted "*SVE was done with Taylor on hands and knees, did*

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:    (248) 593-5100
Facsimile: (248) 593-5108

18

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

*not feel cervix. Some involuntary pushing. Assisted to left-lateral position small amount of cervix palpated on maternal right. Repositioned to left-side. Anticipate pushing to begin soon. Room ready for vaginal delivery. Dr. Collins on call collaborating physician."*

67.     At 15:08, an IV bolus is administered.

68.     At 15:10, a vaginal exam is performed and Ms. Caswell is noted to be dilated to 10.

69.     At 15:28, a progress note is entered by CNM Santos stating Ms. Caswell is pushing with contractions. Fetal heart tones were noted to be 170 with minimal variability, accelerations absent, decelerations present. The strip was described as Category II. CNM Santos further noted *"Fetal tachycardia, delivery not imminent. IV fluid bolus infusing. O2 on per face mask. Dr Collins notified of fetal tachycardia, in office, will come directly to labor and delivery to evaluate."*

70.     At 15:30, Sarah Lennon, RN notes that O2 is at 10 L per non-rebreathable mask and bolus continues to run. At 15:38, it is noted that Ms. Caswell is pushing with contractions and that IV fluids are running and oxygen mask remains on at 10 L/hour. At 15:45 Sarah Lennon, RN states CNM Santos is at the bedside and she reviewed the strips.

71.     At 15:55, Dr. Collins is noted to be at the bedside.

72.     At 16:01 it is noted that Ms. Caswell continues to push with contractions and is using O2 between contractions. At 16:04, Ampicillin is given.

73.     At 16:06, a progress note is entered by Dr. Collins. Dr. Collins notes Ms. Caswell's temperature is 101.9° F. Fetal heart tones are noted to be 185, variability is

moderate, and both accelerations and decelerations are present. Ms. Caswell is noted to be dilated to 10, 100% effaced, and 0 station. Dr. Collins further notes *"Comfortable in bed with epidural, able to feel when contractions occur pushing since 3:30. PROM now with chorio. Amp gent started. IVF bolus for fetal tachycardia. Continue pushing effort, will evaluate for fetal progress, if no appreciable change in reasonable time will proceed with cesarean for fetal concern. Discussed plan with patient."*

74. At 16:15, Sarah Lennon, RN notes *"RN and provider remain at bedside. Provider aware of fetal tachycardia. Fluid bolus continues to run and oxygen 10 L per non-rebreathable mask on patient. Patient continues to push with each contraction."*

75. At 16:15, Dr. Collins enters a progress note stating *"Received call from office who is sending another patient requiring immediate attention to L&D. CNM notified and will communicate if fetal status for room 3 deteriorates. Discussed with Dr. Wriston who will provide backup."*

76. At 16:20, Sarah Lennon, RN administers gentamicin 120 mg in sodium chloride IVPB.

77. At 16:30, Sarah Lennon, RN notes provider and RN remain at bedside, that the provider has reviewed the strips and is aware of fetal tachycardia.

78. At 16:45, it is noted that RN and provider are at bedside, that the provider is aware of fetal tachycardia, and that the fluid bolus continues. At 17:00, it is noted that RN and provider are at bedside, that the provider is aware of fetal tachycardia, and that the fluid bolus continues. Dr. Collins is noted at be at the bedside at 17:05. At 17:14, Ms.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5102

20

Caswell's temperature is noted to be 101.3° F. At 17:15, it is noted that RN and provider are at bedside, that the provider is aware of fetal tachycardia, and that the fluid bolus continues.

79.     CNM Santos attempts to place a FSE at 17:18 and twice at 17:21. At 17:22, Sarah Lennon, RN notes CNM Santos is unable to place a FSE and external ultrasounds are ordered to continue. At 17:30, it is again noted that RN and provider are at bedside, that the provider is aware of fetal tachycardia, and that the fluid bolus continues. A progress note entered by CNM Santos at 17:30 states Ms. Caswell is pushing well with contractions. Her temperature is 101.3° F. Fetal heart tones are in the 160s with moderate variability and intermittent variable decelerations. The fetal strips were described as Category II. CNM Santos further noted "*+2 station, moving baby well. Frequent position changes from left/right side and hands and knees. Hand-holding EFM, 2nd scalp lead came dislodged with frequent position changes and fetal descent. Fetal tachycardia and maternal temp (suspected chorioamnionitis). Continue category II resuscitation measures. IVF bolus infusing. O2 per face mask. Continue ampicillin and gent. Dr. Collins on call consulting physician.*"

80.     At 17:33, Sarah Lennon, RN notes that nursery is at bedside.

81.     At 17:50, it is noted that RN and provider are at bedside, that the provider is aware of fetal tachycardia, and that the fluid bolus continues.

82.     At 17:50, Janiyah Caswell is delivered vaginally. Height is 50.8 cm, weight is 3.39 kg, and head circumference is 36.3 cm.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:      (248) 593-5100
Facsimile:   (248) 593-5103

83.     Delivery note by CNM Santos states, "*17 y/o G1 at 40w6d admitted on 6/13 in active labor. Labor was complicated by maternal fever and fetal tachycardia and variable decelerations. Ampicillin and Gentamicin were initiated. SVD viable female infant at 1750. OA to ROA head and shoulders out without difficulty. Tight nuchal cord 1 able to reduce. No spontaneous cry, pale with poor tone. Cord double clamped and cut immediately, baby to warmer with nursery staff. Cord gases obtained. Weight and measurements pending. Baby to nursery for continued monitoring.*"

84.     Newborn resuscitation note states, "*Baby pale, limp and no respiratory effort at delivery. Cord cut and baby taken to warmer immediately. Baby dried and stimulated. No respiratory effort noted. Bag mask ventilation started at 47 seconds. At 1 minute, good air movement bilaterally with bag mask, HR 130. At 2 minutes, O2 started 10L at 60%. At 2:40 minutes HR 130s, coarse lung sounds. At 2:51 minutes, moderate amount of thick green mucous deleed from stomach and mouth. At 3:15 minutes lung sounds still coarse, bulb suctioned. At 3:35 minutes, baby with minimal respiratory effort; slow and shallow. At 3:57 minutes, HR 150s, improving, blotchy color, minimal attempts to breathe. At 4:47 minutes, blankets removed, pulse ox 83% on 60% FiO2 10 L bag/mask. At 5:34 minutes, HR 150, coarse lung sounds. Percussion performed bilaterally. Color pink with acrocyanosis. At 7:30 minutes, suction for small amount of thick, green secretions. Irregular respiratory effort. At 8:30 minutes, bag/mask performed with good aeration. At 9 minutes, more regular respiratory effort noted. At 9:40 minutes, pulse ox 85%, 60% FiO2 10 L via blowby. At 10:47 minutes, some spontaneous respiratory effort,*"

good heart rate. At 16:25 minutes, baby taken to warmer via transporter to nursery for further evaluation and treatment."

85.     At 18:10, venous cord gas pH is 7.23, pCO2 is 43, pO2 is 33, the base deficit is 9.9, and O2 sats is 59%. Arteal cord gas pH is 7.22, pCO2 is 45, pO2 is 32, the base deficit is 10.1, and O2 sats is 58%. At 18:11, nucleated red blood cells is at 9%.

86.     Placental pathology reveals a three-vessel umbilical cord featuring acute arteritis, phlebitis and focal funisitis.

87.     The 18:31 admission note of Sarah Lighthizer, DO states apgars were 2, 3, 5, 6, and 7. "*Attending present at delivery at ~1 min 30 sec. NP present since delivery. Perinatal complications: Meconium stained amniotic fluid, suspected maternal chorioamnionitis, fetal tachycardia and decels, nuchal cord, prolonged second stage. General examination reveals an ill-appearing, female infant, who responds appropriately to the examination. General perfusion appears delayed (4-5 sec). On warmer bed (warmer not on). The head appears traumatic with cranial molding. Excessive yellow secretions. Lungs are coarse diffusely (has improved since delivery) and the respirations appear unlabored. There is a regular rate & rhythm... Initially tachycardia – this has improved. Weak peripheral pulses but strong and equal brachial and femoral pulses are noted. The skin is intact, warm, and dry. No jaundice is noted at this time. Scalp IV in place. Yellow stained skin with peeling. Umbilical cord and nails not meconium stained. No spontaneous crying. Intermittent bicycling with arching and stiffening of upper extremities. Hypertonic*

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:     (248) 593-5100
Facsimile:  (248) 593-5108

23

*with occasional lip smacking.*" WBC count was noted to be 34. Janiyah was noted to be covered in meconium.

88.     Dr. Lighthizer states a concern for HIE given apgar of 5 at 10 minutes, PPV ~8 minutes, base deficit >10 on arterial blood gas as well as concerning neurological exam. C.S. Mott Children's Hospital accepted transfer for head cooling. Phenobarbital was given.

89.     At 18:10, cord blood gas pH is 7.23, pCO2 is 43, pO2 is 33, HCO2 (HCO3) is 16, the base deficit is 9.9, and the O2 Sats is 59%. Hgb is 19.2.

90.     At 19:00, arterial blood gas pH is 7.25, pCO2 is 30, pO2   is   121,   HCO2 (HCO3) is 15, the base deficitis 13.6, and the O2 Sats is 97%.

91.     Janiyah Caswell was admitted to U of M Mott Children's Hospital NICU at 20:02. Cooling was initiated at 21:00. A head ultrasound was performed on 6/14/17 at 00:11 (6 hours, 21 minutes of age). It was normal. EEG monitor was placed around 05:00.

92.     Pediatric Neurology was consulted at 18:48. At that time it was noted that "*neurologic exam is unremarkable. CSF studies are significant for elevated RBCs, protein, and glucose. Cranial US is unremarkable. EEG LTM demonstrates background abnormalities consistent with severe encephalopathy, excessive negative sharp waves that confer increased risk for siezures, and 2 left occipital subclinical seizures. Additionally, 2 events of abnormal posturing were captured and were not seizures. Janiyah's symptoms and signs are suspicious for hypoxic/ischemic cerebral injury. Additionally, she has had 3 subclinical seizures recorded on EEG. Of note, the lower extremity bicycling and abnormal upper extremity movements are not seizures. We recommend ongoing EEG LTM*

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:     (248) 593-5100
Facsimile:  (248) 593-5108

24

*monitoring, AED management with phenobarbital, and obtaining MR Brain at 7-10 days of life.*"

93.     Pediatric Neurology was again consulted on 6/15/17 at 16:37. There were numerous subclinical seizures at Fp1, Fp2, and O1 overnight but no seizures that day. Diffuse hypotonia was noted.

94.     6/16/17 pediatric neurology note at 18:03 notes numerous multifocal subclinical seizures recorded on EEG.

95.     6/17/17 pediatric neurology note at 17:20 states she has not had any seizures since 6/16/17 at 14:59.

96.     The EEG summary from 6/22/17, day of life five, stated "*During this day of recording no events or seizures were seen. The interictal EEG was abnormal. The background was excessively discontinuous, suppressed and was consistent with improving encephalopathy (from severe to mild-moderate). Excessive negative sharp waves were recorded from C4, Cz, C3, T3, T4 and O1 as well as BRDs at T3, T4, and Fp1 conferred an increased risk of focal onset seizures. Monitoring was discontinued since seizures responded to treatment.*"

97.     An MRI of the brain was performed on 6/22/17, 6 days of life. In a pediatric neurology note from 13:01 that day, it is noted that the MRI revealed subcortical areas of restricted diffusion, primarily in the basal ganglia and that likely Janiyah has some evidence of HIE.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:     (248) 593-5100
Facsimile:  (248) 593-5108

25

98. Janiyah was discharged from U of M Mott Children's Hospital on 6/21/17 and transferred to Bronson Kalamazoo. Active problems upon discharge included:

1. Neonatal encephalopathy;
2. Respiratory insufficiency;
3. Nutritional Deficiency;
4. Neonatal Seizures.

Resolved problems upon discharge included:
1. Bradycardia;
2. Observation & Evaluation of Newborn for Sepsis;
3. Intrauterine Drug Exposure;
4. Metabolic Acidosis;
5. Meconium in Amniotic Fluid.

99. Janiyah was discharged home from Bronson Kalamazoo on 7/3/18 on a combination of Phenobarbital and Lacosamide to control seizures.

100. An EEG was performed on 7/26/17, three months of age, at U of M Mott Children's Hospital. It was interpreted as mildly abnormal in wakefulness and sleep due to mild intermittent left posterior quadrant polymorphic delta slowing, which is suggestive of underlying focal neuronal dysfunction.

101. Janiyah Caswell suffered from delayed delivery, exposure to infection, decreased perfusion and oxygenation causing hypoxia, ischemia, asphyxia, and cellular and tissue damage probably arising before delivery and continuing after birth, resulting in developmental delays, brain damage, and seizure disorder. Janiyah Caswell was diagnosed with hypoxic ischemic injury, neonatal encephalopathy, neonatal seizures, respiratory insufficiency, nutritional deficiency, hypertonia, and developmental delays.

102. Defendants, **HEATHER FOULKE, CNM; HANNAH MARIE THOMAS-GENTZ, CNM; LANIE C. SANTOS, CNM; KRISTA M. RUNYAN, CNM; BETHANY GONZALEZ, CNM;** and **PATRICIA R. ZULL, CNM, as agents**

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

26

of, **BRONSON METHODIST HOSPITAL**, a Domestic Nonprofit Corporation, d/b/a

**BRONSON BATTLE CREEK HOSPITAL**, and **GRACE HEALTH INC.**, a Domestic

**Nonprofit Corporation**, individually and through their duly authorized agents, servants

and/or employees, and in disregard of their duties and obligations to **TAYLOR**

**CASWELL** as Next Friend of **JANIYAH CASWELL** and Plaintiff **JANIYAH**

**CASWELL** and at variance to the standard of the community, were guilty of negligence

and malpractice in the following particulars:

REITER & WALSH, P.C.

PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office: (248) 593-5100
Facsimile: (248) 593-5108

A. Recognize the patient was high risk due to maternal age, due to baby being at 41 weeks gestation, and due to the presence of obesity as evidenced by a BMI of 40 or greater;

B. Appropriately co-manage with a physician a high-risk patient prenatally and during labor and delivery;

C. Perform appropriate testing to confirm fetal well-being prenatally in the presence of complaints of decreased fetal movement spanning over a month, including on 5/2/17, 5/21/17, 5/23/17, 6/6/17, and 6/10/17;

D. Timely act on complaints of decreased fetal movement on 5/2/17, 5/21/17, 5/23/17, 6/6/17, and 6/10/17, including augmentation of labor and/or timely delivery;

E. Timely and appropriately recognize, diagnose, manage and treat maternal infection in the presence of maternal temperature beginning on June 13, 2017, prolonged second stage labor, nine hours of ruptured membranes, and fetal tachycardia;

F. Maintain continuous electronic fetal monitoring, especially in active or second stage labor, in order to confirm and assure fetal well-being;

G. Timely and appropriately provide intrauterine resuscitation in the presence of fetal tachycardia;

H. Timely and appropriately recognize and act on irregular fetal heart rate patterns beginning well before 11:30 am on 6/13/17, which included moderate variability, minimal variability, decelerations, late decelerations, and variable decelerations;

I. Timely advocate for a physician to come to the hospital by 11:30 am on 6/13/17 to examine the patient when there are irregularities in either the fetal heart rate pattern and/or contraction pattern;

J. Timely advocate for performance of a C-section by 15:30 on 6/13/17;

K. Monitor, supervise and manage nurses and other medical and technical personnel;

27

L.  Appropriately communicate between the health care providers including but not limited to L&D nurses, physicians, midwives, and/or other staff;

M.  Timely and appropriately act to avoid meconium aspiration as evidenced by the baby being covered with meconium at birth and the excessive meconium suctioned multiple times;

N.  Avoid a traumatic delivery;

O.  Avoid perinatal hypoxia, ischemia, and asphyxia;

P.  Order and/or perform proper GC, Blood and Urine Cultures to detect and so treat any infections which may threaten the well-being of the baby and mother, including but not limited to Beta Strep infections;

Q.  Timely and appropriately recognize, diagnose, manage and treat genitourinary infection so as to prevent or avert an ascending infection and resulting intrauterine infection;

R.  To detect and treat infectious process which may threatened the mother and baby with appropriate antibiotics;

S.  Timely diagnose and act on maternal infection;

T.  To appropriately interpret electronic fetal monitor strips so as to detect problems with oxygenation in the baby and/or dysfunction in the labor pattern which may adversely affect oxygenation;

U.  To initiate the chain of command when a physician will not respond and/or come to the hospital to evaluate their patient;

V.  To timely request the performance of a C-Section so as to avoid Hypoxia Ischemic insult to the baby in utero;

W.  Timely and appropriately assess, evaluate, monitor and perform a timely delivery;

X.  Give appropriate informed consent;

Y.  Perform timely C-section;

Z.  Refrain from unnecessary delay in performing a timely delivery;

AA.  Properly assess and document fetal heart monitor tracings;

BB.  Appropriately report and advise on fetal monitor strips;

CC.  Appropriately manage nonreassuring fetal heart patterns;

DD.  Appropriately manage nonreassuring fetal heart patterns, including but not limited to head compression;

EE.  Offer the patient the option of a C-Section;

FF.  Appropriate and timely monitor and perform a timely delivery;

GG.  Maintain continuous electronic fetal monitoring in order to confirm and assure fetal well-being and to timely and appropriately recognize and act on non-reassuring fetal heart tone patterns;

HH.  Properly assess and document fetal heart monitor tracings;

II.  Appropriately report and advise on fetal monitor strips;

JJ.  Recognize and act on indeterminate fetal monitor patterns;

KK.  Timely and appropriately provide intrauterine resuscitation;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:      (248) 593-5100
Facsimile:  (248) 593-5108

28

LL.  Appropriately act on failed success of intrauterine resuscitation and timely move to C-section;

MM.  Appropriately manage nonreassuring fetal heart tones and fetal status;

NN.  Appropriately monitor maternal vital signs including but not limited to hypertension;

OO.  Timely place a fetal scalp electrode to accurately monitor fetal heart rate;

PP.  Ensure appropriate training before performing procedures including placement of fetal scalp electrode;

QQ.  Successfully place fetal scalp electrode;

RR.  Timely request assistance by a physician in placement of a fetal scalp electrode if unable to place after multiple attempts;

SS.  Timely act on failure to progress in labor;

TT.  Timely move to C-Section after almost three hours of pushing by mother;

UU.  Avoid hypoxia, ischemia to the infant;

VV.  Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;

WW.  Appropriately communicate with health care personnel;

XX.  Appropriately utilize the chain of command;

YY.  To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;

ZZ.  Appropriately train and educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patterns;

AAA.  Appropriately function as a team;

BBB.  Appropriately assess, evaluate and manage elevated blood pressures;

CCC.  Give proper discharge instructions;

DDD.  Properly train, supervise and manage nurses and other staff;

EEE.  Communicate between the health care providers including but not limited to L&D nurses, physicians, and/or other staff;

FFF.  Appropriately utilize the chain of command;

GGG.  Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;

HHH.  Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;

III.  Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;

JJJ.  Avert any and all additional acts of negligence identified through additional discovery.

103.  Defendants, **JEFFREY CUSTER, MD; BRENDAN M. COLLINS, DO;**

and **LINDSAY K. WRISTON, MD, as agents of, BRONSON METHODIST**

29

**HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation,** individually and through their duly authorized agents, servants and/or employees, and in disregard of their duties and obligations to **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL** and Plaintiff **JANIYAH CASWELL** and at variance to the standard of the community, were guilty of negligence and malpractice in the following particulars:

A. Recognize this patient was high risk due to maternal age, due to baby being at 41 weeks gestation, and due to the presence of obesity as evidenced by a BMI of 40 or greater;

B. Appropriately co-manage a nursing midwives' high-risk patient prenatally and during labor and delivery;

C. Perform appropriate testing to confirm fetal well-being prenatally in the presence of complaints of decreased fetal movement spanning over a month, including on 5/2/17, 5/21/17, 5/23/17, 6/6/17, and 6/10/17;

D. Timely act on complaints of decreased fetal movement on 5/2/17, 5/21/17, 5/23/17, 6/6/17, and 6/10/17, including augmentation of labor and/or timely delivery;

E. Timely and appropriately recognize, diagnose, manage and treat maternal infection in the presence of maternal temperature beginning on June 13, 2017, prolonged second stage labor, nine hours of ruptured membranes, and fetal tachycardia;

F. Maintain continuous electronic fetal monitoring and timely place internal fetal monitoring, especially in active or second stage labor, in order to confirm and assure fetal well-being;

G. Timely and appropriately provide intrauterine resuscitation in the presence of fetal tachycardia and maternal hypotension;

H. Timely and appropriately recognize and act on irregular fetal heart rate patterns beginning well before 11:30 am on 6/13/17, which included moderate variability, minimal variability, decelerations, late decelerations, tachysystole, tachycardia, and variable decelerations;

I. Timely come to the hospital by 11:30 am on 6/13/17 to examine the patient when there are irregularities in either the fetal heart rate pattern and/or contraction pattern;

J. Timely and appropriate recognize and act on a failure to progress;

K. Timely perform a C-section by 15:30 on 6/13/17;

L. Monitor, supervise and manage nurses, CNMs, and other medical and technical personnel;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-3108

M. Appropriately communicate between the health care providers including but not limited to L&D nurses, physicians, midwives, and/or other staff;

N. Timely and appropriately act to avoid meconium aspiration as evidenced by the baby being covered with meconium at birth and the excessive meconium suctioned multiple times;

O. Avoid a traumatic delivery;

P. Avoid perinatal hypoxia, ischemia, and asphyxia;

Q. To admit for long-term antenatal testing prenatally in the presence of complaints of decreased fetal movement;

R. To consult with an OBGYN and to insist that a physician evaluate the patient in the presence of complaints of decreased fetal movement;

S. To timely act on complaints of decreased fetal movement;

T. To timely admit for augmentation of labor in the presence of complaints of decreased fetal movement;

U. To timely request performance of a C-section in the presence of complaints of decreased fetal movement;

V. Order and/or perform proper GC, Blood and Urine Cultures to detect and so treat any infections which may threaten the well-being of the baby and mother, including but not limited to Beta Strep infections;

W. Timely and appropriately recognize, diagnose, manage and treat genitourinary infection so as to prevent or avert an ascending infection and resulting intrauterine infection;

X. Perform appropriate testing to diagnose and treat infection, including but not limited to blood and urine cultures, wet mount, CBCs, and any other testing to detect infection;

Y. To detect and treat infectious process which may threatened the mother and baby with appropriate antibiotics;

Z. Timely diagnose and act on maternal infection;

AA. To appropriately interpret electronic fetal monitor strips so as to detect problems with oxygenation in the baby and/or dysfunction in the labor pattern which may adversely affect oxygenation;

BB. To timely come to the hospital to examine the patient when there are irregularities in either the Fetal Heart Rate Pattern and/or contraction pattern;

CC. To timely perform a C-Section so as to avoid Hypoxia Ischemic insult to the baby in utero;

DD. Timely and appropriately assess, evaluate, monitor and perform a timely delivery;

EE. Give appropriate informed consent;

FF. Perform timely C-section;

GG. Refrain from unnecessary delay in performing a timely delivery;

HH. Timely recognize and act on non-reassuring fetal heart patterns;

31

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:      (248) 593-5100
Facsimile:   (248) 593-5103

II.     Properly assess and document fetal heart monitor tracings;

JJ.     Appropriately report and advise on fetal monitor strips;

KK.     Recognize and act on fetal monitor findings;

LL.     Appropriately manage nonreassuring fetal heart patterns;

MM.     Appropriately manage nonreassuring fetal heart patterns, including but not limited to head compression;

NN.     Offer the patient the option of a C-Section;

OO.     Appropriate and timely monitor and perform a timely delivery;

PP.     Maintain continuous electronic fetal monitoring in order to confirm and assure fetal well-being and to timely and appropriately recognize and act on non-reassuring fetal heart tone patterns;

QQ.     Properly assess and document fetal heart monitor tracings;

RR.     Appropriately report and advise on fetal monitor strips;

SS.     Recognize and act on indeterminate fetal monitor patterns;

TT.     Timely and appropriately provide intrauterine resuscitation;

UU.     Appropriately act on failed success of intrauterine resuscitation and timely move to C-section;

VV.     Appropriately manage nonreassuring fetal heart tones and fetal status;

WW.     Appropriately monitor maternal vital signs including but not limited to hypertension;

XX.     Timely place a fetal scalp electrode to accurately monitor fetal heart rate;

YY.     Ensure appropriate training before performing procedures including placement of fetal scalp electrode;

ZZ.     Successfully place fetal scalp electrode;

AAA.    Assist in placement of a fetal scalp electrode if another provide is unable to place after multiple attempts;

BBB.    Timely act on failure to progress in labor;

CCC.    Timely move to C-Section after almost three hours of pushing by mother;

DDD.    Avoid hypoxia, ischemia to the infant;

EEE.    Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;

FFF.    Appropriately communicate with health care personnel;

GGG.    To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;

HHH.    Appropriately train and educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patterns;

III.    Appropriately function as a team;

JJJ.    Appropriately assess, evaluate and manage elevated blood pressures;

KKK.    Give proper discharge instructions;

LLL.    Properly train, supervise and manage nurses and other staff;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:      (248) 593-5100
Facsimile:   (248) 593-5103

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

MMM. Communicate between the health care providers including but not limited to L&D nurses, physicians, midwives, and/or other staff;

NNN. Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;

OOO. Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;

PPP. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;

QQQ. Avert any and all additional acts of negligence identified through additional discovery.

104. Defendants, **LABOR AND DELIVERY NURSES at BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, as agents of BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, and GRACE HEALTH INC., a Domestic Nonprofit Corporation**, individually and through their duly authorized agents, servants and/or employees, and in disregard of their duties and obligations to **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL** and Plaintiff **JANIYAH CASWELL** and at variance to the standard of the community, were guilty of negligence and malpractice in the following particulars:

A. Recognize the patient was high risk due to maternal age, due to baby being at 41 weeks gestation, and due to the presence of obesity as evidenced by a BMI of 40 or greater;

B. Timely and appropriately recognize and act on maternal infection in the presence of maternal temperature beginning on June 13, 2017, prolonged second stage labor, nine hours of ruptured membranes, and fetal tachycardia;

C. Maintain continuous electronic fetal monitoring and timely place internal fetal monitoring, especially in active or second stage labor, in order to confirm and assure fetal well-being;

D. Appropriately monitor a baby with a Category II fetal strip;

E. Timely and appropriately report and act on fetal tachycardia and maternal hypotension;

F. Timely and appropriately recognize, report, and act on irregular fetal heart rate patterns beginning well before 11:30 am on 6/13/17, which included

33

moderate variability, minimal variability, decelerations, late decelerations, tachysystole, tachycardia, and variable decelerations;

G.  Timely and appropriate recognize, report, and act on a failure to progress;

H.  Timely advocate for a halt in pushing in the presence of irregular fetal heart rate patterns and while doing fetal resuscitation;

I.  Timely advocate and demand obstetrical doctors assess maternal and fetal status at bedside;

J.  Timely notify other care providers regarding fetal distress during labor;

K.  Timely advocate for a C-section by 15:30 on 6/13/17;

L.  Appropriately initiate the chain of command when staffing is inadequate;

M.  Appropriately communicate between the health care providers including but not limited to physicians, midwives, nurses, and/or other staff;

N.  Timely and appropriately report and act in the presence of meconium;

O.  Appropriately prepare for an acidotic baby;

P.  Avoid a traumatic delivery;

Q.  Avoid perinatal hypoxia, ischemia, and asphyxia;

R.  Advocate for admission for long-term antenatal testing prenatally in the presence of complaints of decreased fetal movement;

S.  Advocate for a consultation with an OBGYN and to insist that a physician evaluate the patient in the presence of complaints of decreased fetal movement;

T.  To timely advocate for action on complaints of decreased fetal movement;

U.  To timely advocate for admission for augmentation of labor in the presence of complaints of decreased fetal movement;

V.  To timely advocate for performance of a C-section in the presence of complaints of decreased fetal movement;

W.  Advocate for the order and/or performance of proper GC, Blood and Urine Cultures to detect and so treat any infections which may threaten the well-being of the baby and mother, including but not limited to Beta Strep infections;

X.  Timely and appropriately recognize and advocate for diagnosis, management and treatment of genitourinary infection so as to prevent or avert an ascending infection and resulting intrauterine infection;

Y.  Advocate for performance of appropriate testing to diagnose and treat infection, including but not limited to blood and urine cultures, wet mount, CBCs, and any other testing to detect infection;

Z.  To advocate for treatment of an infectious process which may threaten the mother and baby with appropriate antibiotics;

AA.  Timely advocate for action on maternal infection;

BB.  To appropriately interpret electronic fetal monitor strips so as to detect problems with oxygenation in the baby and/or dysfunction in the labor pattern which may adversely affect oxygenation;

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:   (248) 593-5100
Facsimile: (248) 593-5108

34

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:    (248) 593-5100
Facsimile:    (248) 593-5103

CC.    To advocate or consultation with an OBGYN and to insist that the physician come to examine the patient when there are irregularities in either the Fetal Heart Rate Pattern and/or contraction pattern;

DD.    To initiate the chain of command when a CNM or physician will not respond and/or come to the hospital to evaluate their patient;

EE.    To timely advocate for the performance of a C-Section so as to avoid Hypoxia Ischemic insult to the baby in utero;

FF.    Timely and appropriately advocate for assessment, evaluation, monitoring and performance of a timely delivery;

GG.    Advocate for appropriate informed consent;

HH.    Advocate for performance of a timely C-section;

II.    Refrain from unnecessary delay in performing a timely delivery;

JJ.    Timely recognize and act on non-reassuring fetal heart patterns;

KK.    Properly assess and document fetal heart monitor tracings;

LL.    Appropriately report and advise on fetal monitor strips;

MM.    Recognize and act on fetal monitor findings;

NN.    Appropriately manage nonreassuring fetal heart patterns;

OO.    Appropriately manage nonreassuring fetal heart patterns, including but not limited to head compression;

PP.    Request a CNM or physician offer the patient the option of a C-Section;

QQ.    Appropriate and timely advocate for performance of a timely delivery;

RR.    Maintain continuous electronic fetal monitoring in order to confirm and assure fetal well-being and to timely and appropriately recognize and act on non-reassuring fetal heart tone patterns;

SS.    Properly assess and document fetal heart monitor tracings;

TT.    Appropriately report and advise on fetal monitor strips;

UU.    Recognize and act on indeterminate fetal monitor patterns;

VV.    Timely and appropriately provide and/or advocate for intrauterine resuscitation;

WW.    Appropriately act on failed success of intrauterine resuscitation and timely advocate for a move to C-section;

XX.    Appropriately manage nonreassuring fetal heart tones and fetal status;

YY.    Appropriately monitor maternal vital signs including but not limited to hypertension;

ZZ.    Timely advocate or placement of a fetal scalp electrode to accurately monitor fetal heart rate;

AAA.    Ensure all staff is appropriately trained before performing procedures including placement of fetal scalp electrode;

BBB.    Timely request assistance by a physician in placement of a fetal scalp electrode if another provider is unable to place after multiple attempts;

CCC.    Timely act on failure to progress in labor;

35

DDD. Timely advocate to move to C-Section after almost three hours of pushing by mother;

EEE. Avoid hypoxia, ischemia to the infant;

FFF. Avoid conditions causing or contributing to hypoxia, ischemia, metabolic acidosis, respiratory distress;

GGG. Appropriately communicate with health care personnel;

HHH. Appropriately utilize the chain of command;

III. To obtain complete relevant medical history and complaints and perform a careful and complete physical examination;

JJJ. Appropriately train and educate the nursing staff regarding recognition and management of nonreassuring fetal heart patterns;

KKK. Appropriately function as a team;

LLL. Appropriately assess, evaluate and manage elevated blood pressures;

MMM. Properly train, supervise and manage nurses and other staff;

NNN. Communicate between the health care providers including but not limited to L&D nurses, physicians, and/or other staff;

OOO. Appropriately utilize the chain of command;

PPP. Fully follow rules, guidelines, protocols, bylaws, forms, policies, procedures and/or other such items and/or the failure to promulgate same;

QQQ. Recognize and/or notify concerning significant matters and/or adverse changes in the patient's condition;

RRR. Properly document pertinent information in the medical records including but not limited to vital signs, fetal heart tone and contraction patterns and/or cord gas results;

SSS. Avert any and all additional acts of negligence identified through additional discovery.

105. Defendants, **GRACE HEALTH INC., a Domestic Nonprofit Corporation,** individually and through their duly authorized agents, servants and/or employees, including but not limited to **HEATHER FOULKE, CNM; HANNAH MARIE THOMAS-GENTZ, CNM; LANIE C. SANTOS, CNM; KRISTA M. RUNYAN, CNM; BETHANY GONZALEZ, CNM; PATRICIA R. ZULL, CNM; JEFFREY CUSTER, MD; BRENDAN M. COLLINS, DO; LINDSAY K. WRISTON, MD;** and in disregard of their duties and obligations to **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL** and Plaintiff **JANIYAH CASWELL** and at variance to the

36

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

standard of the community, were guilty of negligence and malpractice consistent with those items listed above in 102(A-JJJ), 103(A-QQQ), and 104(A-SSS), and additionally in the following particulars:

A.    To ensure that the staff was appropriately trained and certified as to matters relating to the care and treatment of pregnant and/or delivering mother;

B.    To establish appropriate policies and procedures and guidelines to ensure that CNMs caring for laboring and pregnant mothers are communicating and/or consulting regularly with a staff OB-GYN;

C.    To establish appropriate policies and procedures and guidelines concerning the circumstances under which a CNM must request a formal consultation with an OBGYN;

D.    To properly train health care personnel to appropriately utilize the chain of command;

E.    To educate the nursing staff and staff providers regarding recognition and management of nonreassuring fetal heart patterns;

F.    To educate the nursing staff and staff providers regarding recognition and management of decreased fetal movement;

G.    To appropriately function as a team.

106.    Defendants, **BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL, as agents of BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a BRONSON BATTLE CREEK HOSPITAL,** individually and through their duly authorized agents, servants and/or employees, including but not limited to **HEATHER FOULKE, CNM; HANNAH MARIE THOMAS-GENTZ, CNM; LANIE C. SANTOS, CNM; KRISTA M. RUNYAN, CNM; BETHANY GONZALEZ, CNM; PATRICIA R. ZULL, CNM; JEFFREY CUSTER, MD; BRENDAN M. COLLINS, DO; LINDSAY K. WRISTON, MD;** and **LABOR AND DELIVERY NURSES at BRONSON METHODIST HOSPITAL, a Domestic Nonprofit Corporation, d/b/a**

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:      (248) 593-5100
Facsimile:   (248) 593-5108

37

**BRONSON BATTLE CREEK HOSPITAL**, and in disregard of their duties and obligations to **TAYLOR CASWELL** as Next Friend of **JANIYAH CASWELL** and Plaintiff **JANIYAH CASWELL** and at variance to the standard of the community, were guilty of negligence and malpractice consistent with those items listed above in 102(A-JJJ), 103(A-QQQ), and 104(A-SSS), and additionally in the following particulars:

A. To ensure that the staff was appropriately trained and certified as to matters relating to the care and treatment of pregnant and/or delivering mother;

B. To establish appropriate policies and procedures and guidelines to ensure that CNMs caring for laboring and pregnant mothers are communicating and/or consulting regularly with a staff OB-GYN;

C. To establish appropriate policies and procedures and guidelines concerning the circumstances under which a CNM must request a formal consultation with an OBGYN;

D. To establish appropriate policies and procedures and guidelines concerning the detection and handling of infections in pregnant mothers;

E. To properly train health care personnel to appropriately utilize the chain of command;

F. To educate the nursing staff and staff physicians regarding recognition and management of nonreassuring fetal heart patterns;

G. To educate the nursing staff and staff providers regarding recognition and management of decreased fetal movement;

H. To appropriately function as a team;

I. To appropriately assess, evaluate and manage elevated blood pressures;

J. To ensure adequate staffing is available, including but not limited to when augmentation of labor is necessary.

107. As a direct and proximate result of the Defendants' breaches as herein alleged, Plaintiff minor sustained damages. Plaintiff minor suffered from delayed delivery, exposure to infection, decreased perfusion and oxygenation causing hypoxia, ischemia, asphyxia, and cellular and tissue damage probably arising before delivery and continuing after birth, resulting in developmental delays, brain damage, and seizure

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5102

38

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office: (248) 593-5100
Facsimile: (248) 593-5108

disorder. Janiyah Caswell was diagnosed with hypoxic ischemic injury, neonatal encephalopathy, neonatal seizures, respiratory insufficiency, nutritional deficiency, hypertonia, and developmental delays, including all damages cognizable under the Standard Jury Instructions and other laws of this state, and as hereinafter indicated.

108.   But for the Defendants' breaches as herein alleged, Plaintiff sustained damages as a direct and proximate result.  Plaintiff suffered from delayed delivery, exposure to infection, decreased perfusion and oxygenation causing hypoxia, ischemia, asphyxia, and cellular and tissue damage probably arising before delivery and continuing after birth, resulting in developmental delays, brain damage, and seizure disorder. Janiyah Caswell was diagnosed with hypoxic ischemic injury, neonatal encephalopathy, neonatal seizures, respiratory insufficiency, nutritional deficiency, hypertonia, and developmental delays, including all damages cognizable under the Standard Jury Instructions and other laws of this state, and as hereinafter indicated.

109.   Plaintiff:

A.   sustained severe bodily injuries which were painful, disabling and necessitated medical care, including delayed delivery, exposure to infection, decreased perfusion and oxygenation causing hypoxia, ischemia, asphyxia, and cellular and tissue damage probably arising before delivery and continuing after birth, resulting in developmental delays, brain damage, and seizure disorder. Janiyah Caswell was diagnosed with hypoxic ischemic injury, neonatal encephalopathy, neonatal seizures, respiratory insufficiency, nutritional deficiency, hypertonia, and developmental delays;

B.   suffered shock and emotional damage;

C.   sustained possible aggravation of pre-existing conditions and/or reactivation of dormant conditions;

39

D.   will be unable to attend to usual affairs including, but not limited to, household chores and personal needs, requiring life-long care up to and including full custodial care;

E.   will be unable to render services including, but not limited to, household chores and personal needs;

F.   will be unable to enjoy the normal pursuit of life;

G.   suffered a loss in ability to earn money and will have impaired earning capacity in the future; and,

H.   will have permanent pain, suffering, impairment and disabilities.

110.   Plaintiff was damaged by the loss of services, society, affection, advice, consortium and earnings, earnings capacity, and expended or became liable for various sums of money for securing medical supplies and attention for themselves and/or each other, all of which damages are continuing and permanent.

111.   Plaintiff did and/or will continue to incur expenses for hospitals, doctors, diagnostic tests, medical procedures, therapies, x-rays, medicines and other medical supplies and attention, as well as housing, care and service needs.

112.   The Defendants' negligence and/or malpractice may have aggravated, activated or precipitated a pre-existing condition and/or damages as alleged herein.

**WHEREFORE,** Plaintiff prays for a judgment against the Defendants in whatever amount above TWENTY-FIVE THOUSAND ($25,000.00) DOLLARS the Plaintiff is found to be entitled, together with interest, costs and attorney fees.

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304
Office:      (248) 593-5100
Facsimile:  (248) 593-5108

40

Respectfully submitted,

**REITER & WALSH, P.C.**

JESSE M. REITER (P40692)
EUEL W. KINSEY (P36690)
Attorneys for Plaintiff
122 Concord Road
Bloomfield Hills, MI 48304
(248) 593-5100

Dated: September ___4___, 2019

REITER & WALSH, P.C.
PROFESSIONAL CORPORATION
122 Concord, Bloomfield Hills, MI 48304

Office:      (248) 593-5100
Facsimile:   (248) 593-5108

## JURY DEMAND

Plaintiff hereby requests a trial by jury of the within cause.

Respectfully submitted,

**REITER & WALSH, P.C.**

JESSE M. REITER (P40692)
EUEL W. KINSEY (P36690)
Attorneys for Plaintiff
122 Concord Road
Bloomfield Hills, MI 48304
(248) 593-5100

Dated: September ___4___, 2019

41